**NOT FOR PUBLICATION**

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

| | | |
|---|---|---|
| FELIX ALBERTO SEIJAS, | : | |
| Petitioner, | : | Civil No. 07-5191 (SRC) |
| v. | : | |
| KIMBERLY ZANOTTI, | : | **O P I N I O N** |
| Respondent. | : | |

**APPEARANCES:**

> FELIX ALBERTO SEIJAS, Petitioner <u>pro se</u>
> 1209-11 Fairmont Ave., Apt. 1
> Elizabeth, New Jersey  07208

**<u>Stanley R. Chesler, District Judge</u>**

On October 29, 2007, Petitioner FELIX ALBERTO SEIJAS (hereinafter "Petitioner"), filed with the Court his petition, pursuant to 28 U.S.C. § 1651 (hereinafter "Petition") and submitted his filing fee. <u>See</u> Docket Entry No. 1. Although the Petition is a thirty-two page document, Petitioner's claims are limited solely to the statements made on the first page; while the remaining pages present copies of the documents that Petitioner deems relevant to his application. <u>See</u> <u>id.</u> The first page reads as follows:

Page -1-

> [Petitioner,] a non-citizen . . . whose naturalization application was filed [on] November 13, 2003, and the last action known was the interview for the N-336 case scheduled to take place [on] 7/26/2007 [i.e., about three months prior to filing of the Petition], but just in furtherance of the barriers imposed by 8 C.F.R. [§] 316.10, for good moral character, noting the conviction of 11/3/1995 for a drug[-]related offense, and missing examination for the good moral character period to be tacked from the misconduct and the [t]en[-]year[] bar imposed in 8 C.F.R. [§] 313.2, the prohibitions clause, which is defining activities of wors[e] nature than a single arrest [o]n 8/13/1993. Former active members of communist, totalitarian and subversive groups are treated differently than social perpetrators offending the drug laws. I pray for a definition of the period of time for "good moral character[,]" including the interval of 10 years as judicially determined in the case of another citizen of Dominican Republic, to wit[,] <u>Lora v. [United States Citizenship & Immigration Servs.</u>, 2007 U.S. Dist. LEXIS 28523 (E.D.N.Y. Apr. 18, 2007)], which overruled [Citizenship & Immigration Services'] 316(a)(3) barriers. . . . There is a family unit facing separation for more than a decade in case of removal to Dominican Republic with the drug conviction. Willful blindness criteria had not been assessed properly, fairly by the immigration administrative authorities.

Pet. at 1. The copies of the documents following the first page present:

(a) a notice of examination of Petitioner's appeal, scheduled on 7/26/2007, and a fee paid for a service which nature is unclear but might be an appellate fee;

(b) Petitioner's request for an immigration hearing, seeking to review a decision rendered on August 11, 2004, and indicating that Petitioner, apparently, failed to appear at the hearing which preceded the challenged August 11, 2004, decision;

(c) Petitioner's resident alien card, three N-400 notices issued

to him, and the N-400 application for naturalization which caused the issuance of these notices;

(d) Two different decisions by the Board of Immigration Appeals (hereinafter "BIA"), affirming denial of naturalization to Petitioner and denying his motion for reconsideration, as well as one prior BIA's decision explaining that Petitioner's conviction for a drug-trafficking offense that qualified as an aggravated felony but remanding Petitioner's case to the (hereinafter "IJ") for consideration of his case in light of the then-newly-enacted Antiterrorism and Effective Death Penalty Act (hereinafter "AEDPA");

(e) A letter of commendation to Petitioner issued by the New Jersey Department of Corrections on April 16, 1996;

(f) A copy of Petitioner's wife's United States passport, their marriage certificate issued on May 28, 1991, as well as the birth certificates of Petitioner's daughters and the resident alien card of his son.

The above-listed array of statements and documents neither provides a clear factual background nor states a clear claim. However, the information provided in Petitioner's submission is sufficient for the Court to determine the key facts, as well as the non-viability of Petitioner's claims, as currently presented.

The statements made by Petitioner, as well as the documents provided, suggest that Petitioner, a citizen and national of the

Dominican Republic born on June 9, 1964, entered the United States while in his early twenties, sometimes between 1986 and 1991. On May 28, 1991, he got married, and his oldest daughter was born two years later, specifically, on April 9, 1993. (Petitioner, apparently, had a son--and, perhaps, a prior marriage--prior to his arrival to the United States.) Four months after his first daughter was born, Petitioner was arrested and charged with possession of cocain with intent to distribute. He was convicted on these charges on October 17, 1994, and, after serving his prison term (which was more than one year), paroled on November 3, 1995. His second daughter was born three years later, on July 28, 1998. At a certain point during the next three years, removal proceedings were instituted against Petitioner, and his IJ ordered him removed from the United States (presumably, to the Dominican Republic). When Petitioner appealed that decision to the BIA, arguing that the offense he was convicted of was not an "aggravated felony" for the purposes of the immigration law, the BIA, on June 7, 2001, dismissed his argument but remanded the matter to the IJ in order to establish whether Petitioner was eligible for a waiver of inadmissibility. Upon remand, the IJ determined that Petitioner was ineligible for such waiver, and the BIA affirmed that determination on October 9, 2003.[1] Three weeks after the BIA's

---

[1] Petitioner's motion for reconsideration of this affirmation was denied by the BIA on October 27, 2004.

affirmation of the IJ's decision, Petitioner filed his N-400 application for naturalization, apparently seeking to prevent his removal to the Dominical Republic.[2] This filing initiated Petitioner's naturalization process, which included an interview. Such interview was scheduled for August 11, 2004, but Petitioner failed to appear at the interview (for reasons unclear from the face of the Petition). Consequently, on the very same day, a order was issued directing administrative termination of Petitioner's application for naturalization. Petitioner, however, was notified that, in the event he submitted, within thirty days from the date of the entry of that order, an explanation as to why he failed to appear at the interview, his application would be reinstated and given due consideration. It appears that Petitioner submitted such explanation, either timely or untimely, in hope that he would be given an alternative interview date. It seems that, at some point during the next two and a half years, Petitioner received a certain decision (although there is no record or any other indication of such decision in the Petition), which he construed as negatively affecting his application for naturalization. Consequently, on January 11, 2007, Petitioner

---

[2] In that respect, Petitioner's facts appear to be particularly murky, since, pursuant to 8 U.S.C. § 1429, "no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this or any other [provision]". Hence, in view of Section 1429, the current state of Petitioner's final order of removal, if any, is not clear to this Court.

filed a request for hearing, challenging the validity of that negative decision. The hearing, apparently, produced an order (which is also not reflected in any manner in the Petition), which Petitioner elected to appeal. The appellate hearing was scheduled on July 12, 2007. The Petition is silent as to the outcome of this appellate hearing, as well as to whether Petitioner's application for naturalization was conclusively denied by the time of Petitioner's filing of his Petition.

As it has been stated <u>supra</u>, the Petition includes only one clearly formulated claim, <u>i.e.</u>, "I pray for a definition of the period of time for "good moral character[,]" including the interval of 10 years as judicially determined in the case of another citizen of Dominican Republic, to wit[,] <u>Lora v. [United States Citizenship & Immigration Servs.</u>, 2007 U.S. Dist. LEXIS 28523 (E.D.N.Y. Apr. 18, 2007)], which overruled [Citizenship & Immigration Services'] 316(a)(3) barriers." Pet. at 1. In addition, Petitioner vaguely hints at the hardships that his family might face in the event Petitioner is removed (while his family, presumably, elects not to follow him to the Dominican Republic), makes a reference to "the [t]en[-]year[] bar imposed in 8 C.F.R. [§] 313.2" and indicates his interest in potential correlation between the concept of "good moral character" employed by the immigration law and his drug-trafficking conviction, as well as the fact that he failed to appear at his naturalization interview. <u>Id.</u> Needless to say, the

dire ambiguity of Petitioner's challenges substantially limits this Court's ability to render an informed and intelligible decision.

That said, this Court will try to address Petitioner's challenges to the degree feasible at the instant juncture.

I. **ORDER-OF-REMOVAL TYPE OF CHALLENGE**

In the event Petitioner's references to the hardships that his family might face if he is removed indicate that he: (a) has an outstanding final order of removal entered against him, and (b) wishes to challenge such order of removal, this Court has no jurisdiction to hear such a challenge. Any challenge to an order of removal must be presented by petition for review with the appropriate Circuit Court of Appeals, pursuant to Section 106(a)(5) of the REAL ID Act of 2005. "Under the new judicial review regime imposed by the REAL ID Act, a petition for review is now the sole and exclusive means of judicial review for all orders of removal except those issued pursuant to 8 U.S.C. § 1225(b)(1)." Bonhometre v. Gonzales, 414 F.3d 442, 445 (3d Cir. 2005); see also 8 U.S.C. § 1252(a)(5) (1999 & Suppl. 2005). Thus, if Petitioner wished to make such challenge in his Petition, that claim will be dismissed for want of jurisdiction.

## II. CHALLENGE TO A FUTURE NEGATIVE ADMINISTRATIVE DETERMINATION

Since: (a) the Petition indicates that Petitioner had an administrative appellate review scheduled three months prior to his filing of the Petition, and (b) the Petition is silent about any final administrative decision that Petitioner challenges( <u>i.e.</u>, it includes neither a ruling denying Petitioner's application for naturalization, nor that dismissing his appeal of such ruling), it appears that Petitioner filed the instant Petition in hope to obtain such decision by this Court, upon which he might rely in support of his position in the event he undergoes an administrative hearing or an administrative appeal. So construed, Petitioner's Petition is subject to dismissal as unripe. "The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy," and "a federal court [lacks] the power to render advisory opinions." <u>U.S. Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc.</u>, 508 U.S. 439, 445 (1993 ) (quoting <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401 (1975)); <u>see also</u> <u>Flast v. Cohen</u>, 392 U.S. 83, 97 (1968). As the Supreme Court explained in <u>Aetna Life Ins. Co. of Hartford, Conn. v. Haworth</u>, 300 U.S. 227, 240-241 (1937):

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. <u>United States v. Alaska S.S. Co.</u>, 253 U.S. 113, 116 [(1920)]. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. <u>South Spring Gold Co. v. Amador Gold Co.</u>, 145 U.S. 300, 301 [(1892)]; <u>Fairchild v. Hughes</u>, 258 U.S.

126, 129 [(1922)]; Massachusetts v. Mellon, 262 U.S. 447, 487, 488 [(1923)]. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

Unless Petitioner obtains a final administrative determination that he wishes to challenge, Petitioner challenge is unripe and will be dismissed for failure to meet the case-or-controversy requirement.[3]

### III. CHALLENGES TO EXISTING DENIAL OF NATURALIZATION

In view of the foregoing, this Court cannot provide Petitioner with advisory opinion. The Court, however, cannot ignore the possibility that Petitioner's challenge might be actually ripe for resolution, and Petitioner's failure to include in his Petition the actually existing decisions that Petitioner wishes to challenge is a mere result of Petitioner's lack of legal savvy. Thus, the Court will grant Petitioner leave to submit an amended petition indicating the final administrative determinations that Petitioner wishes to challenge and specifying Petitioner's challenges to those determinations. See Foman v. Davis, 371 U.S. 178, 182-83 (1962) ("The Federal Rules reject the approach that pleading is a game of

---

[3]

Unsuccessful naturalization applicants must first take an administrative appeal of the denial and complete the administrative process before seeking judicial review. See 8 U.S.C. § 1421(c), (d); 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2.

skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The courts should grant "leave [to amend] when justice so requires"); <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1414 (3d Cir. 1993).

In addition, in view of Petitioner's sole formulated claim ("I pray for a definition of the period of time for "good moral character[,]" including the interval of 10 years as judicially determined in the case of another citizen of Dominican Republic, to wit[,] <u>Lora v. [United States Citizenship & Immigration Servs.</u>, 2007 U.S. Dist. LEXIS 28523 (E.D.N.Y. Apr. 18, 2007)], which overruled [Citizenship & Immigration Services'] 316(a)(3) barriers," Pet. at 1), as well as his reference to "the [t]en[-]year[] bar imposed in 8 C.F.R. [§] 313.2," <u>id.</u>, unambiguously indicating Petitioner's dire state of confusion, this Court will--**without reaching any decision on merits**--outline to Petitioner the legal regime ensuing from the provisions Petitioner referenced to in his Petition.

**A.   STANDARD OF REVIEW**

The federal courts have jurisdiction to conduct a <u>de novo</u> review of the denial of a petitioner's application for naturalization, pursuant to 8 U.S.C. § 1421(c). Under this statute:

> [a] person whose application for naturalization . . . is denied, after a hearing before an immigration officer .

> . . , may seek review of such denial before the United States District Court for the district in which such person resides . . . . Such review shall be <u>de</u> <u>novo</u>, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the Petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

### B.  SUBSTANTIVE STATUTORY AND REGULATORY REGIME

8 U.S.C. § 1427(a) establishes the following requirements for naturalization:

> No person, except as otherwise provided in this title, shall be naturalized unless such applicant unless such applicant, . . . immediately preceding the date of filing his application for naturalization has resided continuously [and physically present], after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application . . . and, . . . during [this five-year period] has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

"Good moral character" is defined in 8 U.S.C. § 1101(f), which states, in relevant part:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was [the] one who has given false testimony for the purpose of obtaining any [immigration] benefits [or the] one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section).[4]

---

[4] 8 U.S.C. § 1101(a)(43)(B) defines "aggravated felony, in relevant part, as "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18),"

The aforesaid statutory regime is further refined by a number of regulations. For instance, 8 C.F.R. § 316.10(b) states that:

> the [naturalization authorities] shall evaluate claims of good moral character on a case-by-case basis . . . . The [naturalization authorities are] not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts *at any time prior to that period*, if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character. [For instance,] an applicant shall be found to lack good moral character if during the statutory period the applicant . . . [h]as given false testimony to obtain any benefit [under the immigration law], if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit; this prohibition applies regardless of whether the information provided in the false testimony was material [in relation to the immigration] benefit.

See, e.g., United States v. Hovsepian, 359 F.3d 1144, 1167 (9th Cir. 2004) (finding that naturalization would not be warranted in view of convictions--that were more twenty years old--because the applicants, during the naturalization interview, refused to discuss the ties with their ex-co-defendants, and citing Santamaria-Ames v. INS, 104 F.3d 1127, 1132 (9th Cir. 1996), the decision holding that convictions from the pre-regulatory period are "highly relevant" to, but not dispositive of, determination of good moral character).

---

while 18 U.S.C. § 924(c)(2) defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.)."

To illustrate, if a person filed his N-400 application on, for example, January 1, 2000, such filing made that person's five-year statutory period to begin on January 1, 1995 (even if the date of his actual grant or denial of naturalization happens long after January 1, 2000); and any statutorily-provided offenses committed by that person, if any, or false testimonies made by the person, if any (or any other statutorily-prohibited acts committed by that person) since January 1, 1995, would rendered the person statutorily disqualified from naturalization. Alternatively, if the person has not committed such acts since January 1, 1995, but engaged in a certain other post-January 1, 1995, conduct, which appeared somehow relevant to his/her pre-January 1, 1995, criminal conviction, the immigration authorities are entitled, under 8 C.F.R. § 316.10, to consider that conviction.

### C.   8 C.F.R. § 313.2

According to the Petition, Petitioner was arrested on August 13, 1993 (presumably the day when he committed his drug-trafficking offense). See Pet. at 1. He submitted his N-400 application for filing on November 1, 2003, and the application was officially docketed on November 13. See id. at 1, 18. Simple mathematics indicate that there is a ten-years-and-three-months time span between the day of Petitioner's offense and that of his N-400 filing. It appears that Petitioner, being cognizant of this ten-year-plus-few-months difference, as well as of the no-time-frame

case-by-case analysis required by Section 316.10 and discussed <u>supra</u>, invites this Court to limit the scope of Section 316.10 analysis by, effectively, legislating a ten-year cut-off period into Section 316.10 on the basis of Petitioner's reading of Section 313.2.  <u>See</u> Pet. at 1.

8 C.F.R. § 313.2 provides that

> no applicant . . . shall be naturalized . . . if, within ten years immediately preceding the filing of an application for naturalization . . . , such applicant . . . has been a member of . . . the Communist Party or . . . advocated communism[,] . . . or . . . has been . . . affiliated with a subversive organization[,] or . . . written or printed matter advocating communism . . . .

In other words, it appears that Petitioner, by arguing that the activities listed in § 313.2 are socially more dangerous than drug-related activities, invites the Court to import the ten-year bar of 8 C.F.R. § 313.2 into 8 C.F.R. § 316.10.  <u>See</u> Pet. at 1. The Court declines the invitation. First, as the Court of Appeals for the Ninth Circuit observed in <u>Hovsepian</u>, while addressing an analogous act of undue judicial activism, a judicial decision artificially finding a way to ignore the fact of a criminal conviction

> on the ground that a federal court thinks it is unfair that an alien will be deported as a result of that conviction usurps the power of Congress to set naturalization and deportation standards and the power of the [immigration authorities] to administer those standards in each individual case. Congress has the power to create collateral consequences of a criminal conviction [and the courts should not usurp that power].

Hovsepian, 359 F.3d at 1154-55 (citing United States v. Bravo-Diaz, 312 F.3d 995, 998 (9th Cir. 2002)). Consequently, this Court, not being a legislative body, simply cannot import a cut-off period set forth in one regulation into another.

Second, even if the Court developed an unwarranted fancy to import the cut-off period set forth in 8 C.F.R. § 313.2 into Section 316.10, Petitioner would be worse off--rather better off-- as a result of such importation, since Section 313.2's mandatory ten-year preclusionary period corresponds to the mandatory five-year preclusionary period set forth in 8 C.F.R. § 316.10 (and its enabling statutory mandates of 8 U.S.C. §§ 1101 and 1427).[5] Nothing in the language of § 313.2 precludes immigration authorities from examining, much in the fashion of Section 316.10, those relevant conducts of naturalization applicants, which occurred more than ten years prior to filing of their N-400 applications. See, e.g., Hovsepian, 359 F.3d 1144 (finding an error in the district court's decision to decline consideration of more-than-ten-year-old contacts between the applicants and a subversive organization). In other words, Section 313.2 *ensures* that no person involved in § 313.2 activities within ten years of his/her filing of naturalization application is allowed to become

---

[5] By contrast, Petitioner attempts to equate the *mandatory* ten-year preclusionary period of Section 313.2 to *discretionary* no-time-frame period of Section 316.10.

United States citizen, but the language of that Section *in no way prevents* the immigration authorities from enlarging the pool of rejected applicants by denying the applications of those who were involved in § 313.2 activities more than ten years prior to filing.

### D.   The Lora decision

Finally, Petitioner appears to be under the impression that the court in Lora, 2007 U.S. Dist. LEXIS 28523, somehow read a ten-year-cut-off period into 8 C.F.R. § 316 in order to "overrule [Citizenship & Immigration Services'] barriers." Pet. at 1. If so, Petitioner misreads both the facts and the holding of Lora.

In Lora, the alien entered the United States when he was 16 years old and, upon his arrival, enrolled in a high-school while working part-time at a grocery store.

> Others in the store were drug dealers. On approximately five occasions, [the alien, being 17 years old] took money from customers and placed it into the cash register, knowing that the money was being paid for drugs supplied by others in the store. This conduct resulted in a criminal charge . . . alleging that on two occasions . . . he sold cocaine from the store in concert with others. [The alien] pled guilty to those charges and, [being] adjudicated . . . a youthful offender, [was] sentenced to time served and five years probation. [Seven years later, when he was 24 years old, the alien] went to a Sears store . . . with a friend. Acting together, the two of them shoplifted approximately $ 313.00 worth of clothing. [The alien] pled guilty to one count of attempted petit larceny, and he was subsequently sentenced to a conditional discharge of one year and a fine of $ 150.00.

Lora, 2007 U.S. Dist. LEXIS 28523, at *3-4.

Denying the alien's naturalization, the government disqualified him alleging that: (a) the alien lied on his application because, in response to the N-400 question "whether he had ever committed a crime for which he had not been arrested, [he] answered 'no,'" while his seventeen-years-old drug-related indictment, i.e., "the charging instrument to which [the alien] pled guilty alleged only two of the sales, [which, in turn, meant that the other three sales] constitute[d] crimes for which [the alien could but] was not arrested," id. at *6; and (b) his ten-year-old shoplifting charge indicated lack of good moral character. See id. at "8. The court in Lora rejected the government's arguments finding that the alien did not lie (but rather reasonably responded to the questionnaire) when he stated that he was having no outstanding arrest warrants, since the nature of criminal litigation process made any future arrests based on three sales not charged seventeen years ago unrealistic, especially in view of the two sales that resulted in charges and conviction. See id. at *7.

Addressing the alien's shoplifting charge, the Lora court noted that,

> [b]ecause [the alien] was 24 at the time, the shoplifting conviction . . . , though a considerably more minor offense [than a drug-related one], is in a way *more troubling* [than the drug-related one, even though the alien incurred it as a juvenile]. Nevertheless, [the alien] has demonstrated in the [time] interval since that [shoplifting] offense was committed that he can be, and has become, a law-abiding, hard-working member of his community. Though the [ten-year-old] shoplifting conviction, both standing alone and when considered in

> connection with [his juvenile seventeen-year-old] drug conviction, makes the decision a close one, [the court] conclude[s] that these circumstances do not prevent [the alien] from meeting his burden [of establishing good moral character].

Lora, 2007 U.S. Dist. LEXIS 28523, at *8 (emphasis supplied).

The foregoing unambiguously indicates that the court in Lora did not impose any ten-year cut-off period. The mere fact that the shoplifting by the alien in Lora occurred ten years prior to his N-400 application is purely coincidental, and--contrary to Petitioner's belief--the Lora court affirmed the propriety of inquiry into the alien's ten-year-old conduct, as well as into his *seventeen-year-old conduct as a minor*. See id. If anything, the Lora decision supports the proposition that, pursuant to Section 316.10, the immigration authorities should conduct a careful review of each application on a case-by-case basis, and should indeed examine the relevance of all pertinent actions by the applicant, including those occurrences that took place long before the five-year statutory period.[6] See id. The foregoing, however, does not indicate that the naturalization application of Petitioner should--

---

[6] The Court notes, in passing, that adoption of Plaintiff's reading of Lora would necessarily result in consideration of Petitioner's 1993 conviction (apparently, the outcome not desired by Petitioner), since, under Petitioner's reading of Lora: (a) all events that occurred within ten year prior to filing of the applicant's N-400 should be considered by the reviewing court; (b) the Lora's court expressly concentrated on the dates of convictions rather than the date of the offenses underlying those convictions; and (c) Petitioner's conviction occurred in 1994, that is nine years prior to his filing of his N-400.

or should not--be granted. As noted supra, at the instant juncture, this Court, having no actual administrative decision in front of it and, moreover, lacking the information as to whether such final decision was ever rendered, is prevented from assessing all relevant facts and, thus, from resolving this matter on merits.

## CONCLUSION

For the foregoing reasons, the part of the Petition suggesting a challenge to Petitioner's order of removal will be dismissed for want of jurisdiction. The remainder of the Petition, being construed as a speculative challenge to a hypothetical future administrative decision, will be dismissed as unripe. Petitioner, however, will be granted leave to submit an amended petition: (a) specifying the particular final administrative decision, if any, which Petitioner is wishing to challenge, and (b) detailing the nature of his challenges.

An appropriate Order accompanies this Opinion.

STANLEY R. CHESLER
United States District Judge

Dated: 2/6/08